13948

LEONARD v. BROAD RIVER POWER CO.

(177 S. E., 152)

*Messrs. Harry M. Lightsey* and *D. M. Winter* for appellant,

*Messrs. Elliott, McLain, Wardlaw & Elliott* for respondent.

November 16, 1934.

The opinion of the Court was delivered by MR. JUSTICE STABLER.

This is an action for damages, both actual and punitive. The plaintiff alleged, *inter alia,* that the defendant, a public utility company, which had been furnishing him electric current for lighting purposes at his store, 1725 Two Notch Road, near the City of Columbia, on or about May 16, 1932, without just cause or excuse, willfully and wantonly discontinued the service, and thereafter refused to restore it upon demand; and that, as the result of these wrongful acts, his mercantile business, which theretofore had been good, was almost completely destroyed.

The defendant, while admitting that it had furnished Leonard, as one of its patrons, with electric current for lighting purposes at his store as claimed, alleged that it had discontinued such service because of his failure to satisfy a past-due bill therefor, and had declined to restore it on account of his refusal to pay the reconnection fee required.

The case was tried before the late Hon. W. H. Townsend, circuit Judge, in whose recent death, we here take occasion to say, the State lost a citizen of the highest character and a Judge of unquestioned ability and fairness. He directed a verdict for the company as to punitive damages, but submitted the question of actual damages to the jury, who found for the plaintiff $50.00.

A new trial was asked for by counsel for Leonard upon the following grounds: (1) That the defendant, its agents and servants, at or before the hearing of the case, had improper relations and communications with members of the jury, and for that reason the plaintiff failed to obtain a fair and impartial trial; (2) that under no reasonable application of the testimony could a verdict for $50.00 be arrived at or sustained; (3) that the Court erred in directing a verdict as to punitive damages, as there was evidence that the defendant acted in the matter in a willful and malicious manner; (4) that there was error in admitting testimony, over objection, as to oral conversations between different employees and agents of the company, about matters pertaining to the facts of the case, the plaintiff not being present at the time and not knowing anything about the truth of such matters; (5) that the failure of the Court to charge the jury as to the proper measure of damages, and as to the different elements they should consider in determining the amount of their verdict, was harmful error; (6) and that the jury was erroneously instructed, as the request or the defendant, as to what would be a sufficient demand upon or notice to the company by plaintiff for the restoration of service.

A new trial being refused by Judge Townsend, this appeal was duly prosecuted by the plaintiff, who raises the same questions by his exceptions as those involved in the grounds of his motion. These we will consider in the order stated.

I. An examination of the record discloses that the ■■ Court had before it, on the hearing of the matter here complained of, an affidavit of Irvine F. Belser, Esq., a reputable attorney of the Columbia Bar, in which he stated that, after the verdict in the present case had been rendered and published, he went to the rear of the court-room and into the center room sometimes occupied by the jury, and there met a claim agent of the defendant and one of the jurors who sat in the case; and, as they came out of the door together, he saw in the hands of the juror a paper which was perfectly folded and which appeared to be a check on the South Carolina State Bank, and that the "expression on the faces of the two men was such that it led deponent to believe that they would rather he had not seen them." The juror in question, one T. J. Slice, made an affi-davit—which was not before the trial Judge—in which he declared that he had no check in his hands that day except the pay warrant given him by the clerk.

Of course, tampering, or attempting to tamper, with jurors in any case by anyone, will be dealt with severely by the Court; and, where the reported circumstances are such as will lead to the reasonable conclusion that this has hap-pened, it is the duty of the trial Judge to make such investi-gation as may be proper in the premises. However, the mat-ter, to a large extent, must necessarily be left to his discre-tion, as he is in a position to better determine what should be done. In the case at bar, while the facts related by Mr. Belser in his affidavit may indicate such wrongdoing on the part of the defendant, it appears Judge Townsend concluded that an investigation, under the showing made, was not warranted or required. He doubtless thought that the meet-ing of the claim agent and the juror, at the time and place named, while fruitful of suspicion in the circumstances, could have been merely accidental. Upon reflection, we can-not say that he was wrong in this.

II. While the presiding Judge may grant a new trial, in actions for torts, upon the ground that the verdict is grossly inadequate *(Bodie v. Charleston & W. C. Railway Company,* 66 S. C., 302, 44 S. E., 943), the matter of doing so, as in the case of an excessive verdict, is largely in his discretion. It may be that the testimony in the case before us, as argued by appellant, indicates that the plaintiff's loss, if any, was greater than that found by the jury. However, it has not been made to appear to our satisfaction that Judge Townsend, to whom the question was fairly submitted, abused his discretion, which is nothing more than saying he committed error of law, in refusing to grant a new trial on this ground.

III. There is no merit in the contention that the Court erred in directing a verdict for the defendant as to punitive damages. We have read the testimony relied on by plaintiff to sustain his position—which we deem it unnecessary to review—but find no evidence of willfulness or wantonness on the part of the company in what it did in discontinuing or in refusing to restore the service in question.

IV. The trial Judge permitted an employee of the company, one Callahan, to testify, over plaintiff's objection, as to a conversation between him and Fullbright, another employee of the defendant. The witness stated that Fullbright communicated with him by phone on May 13th that Leonard wanted to pay his bill on the 14th, and that, pursuant to this advice, he made a notation, "5-14-32," on his office record, for the purpose of showing that the bill would be held through that date to give the customer an opportunity to pay it; and that, while he did not write the word "hold," the notation he made meant that.

The appellant contends that this testimony was self-serving and hence inadmissible, being merely an effort on the part of the defendant to prove, by incompetent evidence,

that it had not agreed to hold the account until the 16th, as testified to by plaintiff.

If there was error in the admission of this testimony (*Simon v. Aetna Casualty & Surety Company*, 151 S. C., 44, 148 S. E., 648), it does not appear that it was harmful to the appellant. He testified, as stated, that Fullbright promised to hold the account until the 16th, and it is admitted that the defendant did not discontinue the service until noon of that day.

V. The plaintiff testified that his profits on goods sold averaged "anywhere from eighteen to twenty per cent," and introduced in evidence his stock statement as of January 1, 1933, which indicated that his sales for the year 1932 were much smaller after his lights "were cut out" than before.

The Court charged the jury that, if the service was wrongfully discontinued by the defendant, "the plaintiff would be entitled to recover such actual damages as were approximately caused to him by cutting off the lights being furnished him. Such damages would include any injury done his business, in the furtherance of which the light was being furnished and in estimating such damage, you should take into consideration all evidence bearing on that question, the amount and character of the business and the amount of loss, if any, caused by the discontinuance of electrical service, and give such an amount as would fairly and fully compensate the plaintiff for such loss," and "if there was a wrongful refusal to restore service to him, the plaintiff would be entitled to recover such damages as would flow from such wrongful refusal, which would include damages to compensate him for the actual injury done him, to his business and the loss thereby occasioned to him."

This charge, as far as it went, was a correct general statement of the proper measure of damages, and, if the plaintiff desired more detailed instructions, he should have made re-

quest therefor. Having failed to do so, he cannot now complain. *Youngblood v. Southern Railway Company,* 152 S. C., 265, 149 S. E., 742, 77 A. L. R., 1419, gives no support to appellant's contention. The case was brought under the Federal Employers' Liability Act (45 USCA, §§ 51-59), and the rule there stated was in accordance with the principles of law announced by the United States Supreme Court, which had declared that the rule was "an integral part of the statute," and that it was the duty of the trial Judge to instruct the jury as to it, whether so requested or not. However, the Court pointed out that, when the charge given is correct as a general statement of the rule, a party desiring fuller instructions must ask for them.

VI. Counsel for defense requested the Court to instruct the jury "that in a business the size of this, it is reasonable to have different departments, and you cannot just make a request to any person working for the company. In other words, a request for restoration, if any was made, ought to be made to the proper person in charge of the proper department." In response thereto, the Judge said: "Yes, sir, a request for the restoration of service *must be made* to an official or agent of the company having charge of such business." (Italics added.)

Appellant argues that this charge, without qualification, was erroneous, and, in view of the testimony in the case, was especially damaging to the plaintiff. This contention is not without merit. The plaintiff testified that, when he paid his past-due bill, he made demand at the company's office where the claim was paid that his lights be restored, and that the lady there in charge stated "she would tell the man to cut them back on." Of course, a request for restoration of service is properly made to an agent of the company having charge of such department. But that does not necessarily mean that such request made otherwise is never sufficient. For instance, in the case at bar, if the plaintiff made demand

as he claimed he did, and the person in charge of the collection department, who did not deny, but rather admitted, that she knew what steps were necessary to be taken to have the lights cut on, told him that she would attend to the matter and see that it was done, he had a perfect right to rely upon such assurance, and the request as made was sufficient notice to the company. It is true that the young woman, although she could not be positive about it, stated that she was satisfied she had referred plaintiff to the proper department. However, what happened between them about the matter was a question for the jury under the evidence. We merely hold that the Court should have charged, in connection with defendant's request, that, if the jury found that plaintiff made demand for restoration of service, at the office where he paid his bill, and was told by the person there in charge that she would see that the matter was attended to, this was a sufficient demand; and failure to so charge was prejudicial error.

The judgment of the Circuit Court is reversed, and the case remanded for a new trial as to actual damages.

MR. CHIEF JUSTICE BLEASE and MR. JUSTICE CARTER concur.

MR. ACTING ASSOCIATE JUSTICE W. C. COTHRAN (dissenting):

I fully agree with the main opinion in holding that the charge of the circuit Judge was erroneous, but I do not think it is sufficient to warrant a reversal of the judgment, for the following reasons:

The action was brought for damages alleging loss to the plaintiff by reason of the fact that his electric lights were cut off, and also upon the ground of failure of the defendant to restore the lights upon payment of the light bill. I can find no evidence of loss or damage by reason of the fact that the lights were cut off nor can I find any showing that the defendant did not have the right to discontinue the service.

The lights were cut off only about two and a half hours during the morning and early afternoon, and there is no evidence to show that the lights would have been used during that time even if they had not been cut off. The entire testimony was directed to the damage sustained by the plaintiff because the defendant failed to restore the service after the light bills had been paid. The charge of the circuit Judge was such that, if the jury had followed it, there would have been a verdict for the defendant. In fact, a verdict for the defendant might readily have been directed by the Court after he made the charge which was erroneous; there being no testimony to show damage arising from the two and a half hours during which the lights were cut off. Under these conditions, the jury evidently disregarded this erroneous charge of the Judge, and based their verdict upon the failure to restore the service after the light bills were paid. This is the only basis upon which a verdict for the plaintiff could have been rendered.

I admit that the charge was erroneous, but I cannot see where it was prejudicial to the plaintiff.

In the recent case of *Williams v. Metropolitan Life Insurance Co.* (S. C.), 176 S. E., 340, not yet reported [in State report], Chief Justice Blease says: "It is not necessary that exceptions, alleging error in the charge to the jury, be considered, for, under our view, if the instructions were erroneous, . . . they would not have affected the verdict for actual damages."

MR. JUSTICE BONHAM concurs.