SHOCKLEY v. COX CIRCUS COMPANY, INC., *ET AL.*

(29 S. E. (2d); 491)

354

 September, 1943. 

*Messrs. Mann & Arnold,* of Greenville, S. C., Counsel for Appellant, 

*Mr. Henry L. Strickland,* of Charlotte, N. C., and *Messrs. Love & Thornton,* of Greenville, S. C., Counsel for Respondent,

March 13, 1944.

MR. ASSOCIATE JUSTICE STUKES delivered the unanimous opinion of the Court:

Plaintiff, a young married woman twenty-two years of age, whose husband was away in the service of the United States Navy, was employed in October, 1942, as a waitress in appellant's lunch room on the outskirts of the City of Greenville. After midnight of October 30th, plaintiff accompanied appellant in his sedan automobile to take some colored employees to their homes across the city, after which appellant was taking plaintiff to her home which was just off the Asheville highway (our State No. 25), known locally as the New Buncombe road, and there were then no other occupants of the car.

Traveling a stretch of at least several hundred feet of fairly straight pavement, twenty or more feet wide and with four-foot asphalt shoulders on each side, the car was driven by appellant into and under the rear of a heavily loaded truck of the defaulting defendant, Cox Circus Co., Inc. Appellant was overtaking the truck and both vehicles were on their right of the center line. The cargo of the truck consisted of heavy plank and other timbers which protruded from the back, and it was giving the colored driver trouble, he thought from a slipping clutch, and it was difficult for it to travel under its load; it was moving along slowly or was possibly at a standstill at the time of the collision.

The testimony and physical evidence tended to show that appellant was driving at a high and dangerous speed, possibly sixty or more miles per hour, whereas the legal speed limit established by the highway department at this point was thirty-five miles per hour, so indicated by signs along the road. 1942 Code, Sec. 1616. It is fairly inferable from the evidence that appellant saw the truck only when he was

practically upon it and tried unsuccessfully to turn left in order to avoid the collision. Unfortunately, he had in recent months lost the sight of one eye. He testified that he had no time to apply his brakes and there was no evidence of their use. He further said that he had just passed another automobile going in the same direction and was forced to turn sharply to the right in order to avoid collision with an oncoming car, but a reading of the record is convincing that the jury were fully justified in refusing to follow appellant's testimony. He produced no witness who was an occupant of the other vehicles which he mentioned, and, on the contrary, there was testimony that no other automobile was about.

Appellant's car was driven under the rear end of the truck and load, as said above, reaching the rear axle of the truck and the vehicles were so strongly bound together that the automobile was extricated only by the power of another truck which came up from the rear, together with the aid of the truck involved in the collision pulling in the opposite direction. Plaintiff and appellant were badly hurt and unconscious. Several who came upon the scene, including some Greenville County officers, had considerable difficulty in removing them even after the wrecked vehicles were finally separated. The automobile was afire and it appears that only the courage and presence of mind of the driver of a large truck which overtook the wreck, and the prompt use of his fire extinguisher, saved the lives of the victims.

Plaintiff was very seriously injured, was unconscious for days and spent over six weeks in hospital. At the time of the trial almost a year after the accident the wound of a fractured ankle was still draining and she is, at best, permanently crippled by that mishap. In addition there were serious head injuries resulting in badly impaired eyesight and almost constant headaches and pains. There are also disfiguring scars and a recent photograph of her was intro-

duced in evidence to show the impairment of personal appearance which resulted from her injuries.

The present appellant sued the Circus Company for his damages in the United States District Court but the action was settled by payment of the sum of $300.00, agreed upon by the parties when the jury were deliberating upon their verdict. Plaintiff testified for him but within a few days afterward instituted this suit. She was examined at the trial with respect to the conflicts between her testimony in the Federal Court and the allegations of her complaint in this action. However, her case is not dependent upon her testimony alone for there was ample other evidence to sustain the verdict of the jury. Able attorneys who conducted the trial defense for appellant did not move for a nonsuit or for a directed verdict in his favor.

The complaint was based upon the alleged concurrent negligence, recklessness, willfullness and wantonness of both defendants, and contained many specifications of alleged acts of negligence, etc., which it was contended concurred and combined to proxmately cause plaintiff's injuries. There was no, or negligible, evidence to sustain a number of the specifications but there were no motions requesting the elimination of any of them from the consideration of the jury and, upon careful consideration of the record, we have no doubt that there was sufficient evidence to sustain the verdict of the jury with respect to some of them relating to both defendants, which is the test if it were necessary to apply it in this case.

Damages were sought in the amount of $15,000.00; the case was submitted to the jury upon the theory that plaintiff, respondent here, was a guest in the automobile of appellant and instructions pertinent to that relation were given; and the jury returned a verdict for $7,500.00. Before such they visited the locus upon their volition. Motion for a new trial was made on two grounds, first that there was no evidence upon which the jury could conclude that liability ex-

isted under our "guest statute", section 5908 of the 1942 Code, whereby recovery is allowed only if injury results to a guest passenger (plaintiff) from the intention of the (defendant) owner or operator of the vehicle or is caused by his heedlessness or reckless disregard of the rights of others (*Fulghum v. Bleakley,* 177 S. C., 286, 181 S. E., 30); and second, that the evidence was susceptible only of the inference that the accident resulted from the negligence of the co-defendant, Cox Circus Co., Inc., who failed to answer the complaint. The able and long experienced trial judge refused the motion without comment of record.

The appeal is upon seven sub-divided exceptions which counsel have conveniently condensed into six questions, the order of which will be followed in the disposition of them. The first is: Did the trial judge commit error in permitting the witness Tate to testify as to the speed of the defendant's car?

The witness referred to testified that his home was on the New Buncombe road and about 85 feet from it, where he had been living about six years. His wife was employed in a nearby cotton mill and got off from work at midnight, he meeting her there and walking home with her, which took about fifteen minutes, and on this occasion they sat on the porch for a brief rest and the circus truck passed before them, he having seen it approaching as he crossed the road to his house. He said that the truck was evidently laboring and not running over ten miles an hour. Just after it passed witness and his wife entered the house to retire and went in their bedroom, just off the porch and nearest the highway and about 200 to 225 feet from the scene of the wreck; both windows were open; as they entered the room an automobile (designated by him in his testimony as "this automobile") "passed at a terrific rate of speed, I wouldn't say how fast, but enough for us both to notice, to take notice of it, and as it went by the roar just seemed to roar by, and as it roared by, the crash came."

He was asked in effect by respondent's counsel (this was all on direct examination) whether from his observation of traffic on this road over the years and his hearing of it, he had some idea of the speed of the car from its sound. He replied: "I could not put the speed below sixty miles an hour." After this answer was out trial counsel for appellant objected, complaining incidentally that he could not hear the witness because of the noise of traffic about the Court House. Examining counsel restated his question to be whether the witness was not qualified by experience to judge the speed of cars by the noise they make, and upon further objection the court ruled as follows: "I hardly think he could qualify himself as an expert. He can say he heard them and how fast he thinks this car was running." Appellant's counsel then stated his view that he did not think it competent for the witness to judge the speed of an automobile which he could not see at night, further saying, however, that the witness might say that it was either fast or slow. Thereupon the question was reworded and the witness cautioned not to estimate the speed in miles but, from the noise he heard, to say whether the speed was reasonable, fast or unusually fast. Then the court inquired whether there was objection to the question and counsel said: "I think not, your Honor, let him go ahead and answer it." The answer was: "I would say that it was going at a terrific rate of speed." And there was no further objection by appellant's counsel.

This incident in the testimony has been rather fully stated in order to demonstrate that appellant has no just ground of complaint, for the first question, which resulted in the estimated mileage, was not objected to by counsel, nor was motion made to strike the answer out; and the question and answer relating to "a terrific rate of speed" were not only not objected to, but counsel expressly stated his approval of the form of the question. Discussion, then, of the propriety of a witness undertaking to estimate speed from the noise

of the vehicle alone is not in order. Incidentally, the testi-
mony of this witness was corroborated by another (Perry)
whose car was passed by that of the appellant a half mile
from the place of the accident and who testified without ob-
jection that appellant was "going sixty or sixty-five"; and
high speed was also indicated by the condition of the ve-
hicles after the collision, already adverted to, and the un-
usually fine pictures of them which were in evidence.

> Appellant's second question is based upon his ex-
> ception II which is here copied, except the latter,
> argumentative portion:

"That it was prejudicial error for plaintiff's counsel to
propound the following questions to the defendant Worley
(the appellant):

" 'Q. Mr. Haynsworth asked you if you had been drink-
ing on this night; I am going to ask you frankly Tom, or
Mr. Worley, do you or not drink regularly and continuous-
ly? A. No, sir.

" 'Q. You don't; when has a day passed you didn't take
a drink? A. Today.'

"To which defendant's attorneys objected and the objec-
tion was sustained, but which nevertheless was prejudicial
to the interests of the defendant."

One of the specifications of negligence in the complaint,
charged against appellant, was, upon information and belief,
that he was operating his car while under the influence of
intoxicants. The only substantiating evidence noted in the
record is that there was found in the automobile an empty
liquor bottle which was said to have been thrown from the
glove compartment to the floor of the car by the force of
the collision.

The allegedly offensive questions were asked on cross ex-
amination in an apparent and fruitless effort to produce
proof of plaintiff's charge in her complaint. But it is seen
that such failure and the answers were entirely favorable

to appellant, who however now complains that the questions and answers should not have been admitted. Only after such, and after they were in the record, did appellant's counsel object. Thereupon the court ruled as follows: "I think you are going too far afield, Mr. Love. The question is was he drinking that night." The subject was not pursued.

The stating of this incident in the trial is, we think, sufficient to show that there was no error. In the first place, counsel did not interpose a timely objection and did not move to strike the allegedly objectionable matter from the record, but contented himself with the favorable ruling when he finally raised the question and the subsequent desistance of the examining attorney.

Secondly, it is unnecessary to cite authority for the general rule that the proper limits of cross examination are largely fixed by the trial judge, in his discretion; and we are unable to find prejudice to appellant in this occurrence. Rather it appears that he was benefited by his forthright denials of the insinuations contained in the questions. It is established that counsel cannot, even on cross examination, ask groundless questions for the purpose and with the result of prejudicing a party (who is testifying) by the nature of the questions. *Edwards v. Union-Buffalo Mills,* 162 S. C., 17, 159 S. E., 818; *Merritt v. Great A. & P. Tea Co.,* 179 S. C., 474, 184 S. E., 145; *State v. Bealin (Belin),* 201 S. C., 490, 23 S. E. (2d), 746. But the stated rule must be harmonized with the ordinarily wide range which cross examination may properly take. It is this problem which is largely for the solution of the trial judge, in the exercise of his discretion, to the end that the trial will be fair and its result unaffected by prejudice. *Leevy v. North Carolina Mut. Life Ins. Co.,* 184 S. C., 111, 191 S. E., 811.

It is next alleged in argument that the court erred in his instructions to the jury, as follows:

"Now, gentlemen, as I say, actual damage is compensation, pay. In this case you take into consideration the injury to the plaintiff. In our law we have what is called a Mortuary Table, a table of expectancy. As I remember, it is called to the attention of this Court, with this lady's age, she has forty years expectancy to live. Of course, Mr. Foreman and gentlemen, the legislature can't say she is going to live that long; but that is a question for the jury to determine, if she will live and be precluded from doing her work; where she is capable, what would she likely earn during those forty years; and you will take that into consideration in determining how much she has been damaged."

Two charges of error are made, first that the reference to the Mortuary Table was a charge upon the facts, and secondly, that the measure of damages was misstated or, at least, insufficiently stated.

As to the first imputation, we fail to find any charge upon the facts in the court's reference to the statutory Mortuary Table. He stated that it showed plaintiff's life expectancy to be forty years, the accuracy of which is not challenged, but he went on to say, in effect, that the table did not mean that she would live that long, that it was in final analysis for the jury to determine. *Clifford v. Southern Ry.*, 87 S. C., 324, 69 S. E., 513; *Hambright v. Atlanta, etc., R. Co.*, 102 S. C., 166, 86 S. E., 375; *Norris v. Greenville, etc., R. Co.*, 111 S. C., 322, 97 S. E., 848. Particularizing the applicability of the statute to "this lady", criticised by appellant, was unobjectionable for the reason stated in *Clifford v. Southern Ry., supra*. In the absence of contrary evidence she was presumed to be in good health and physical condition prior to the injuries.

It is argued that the meaning of the instruction concerning plaintiff's earning capacity was that the jury might include in any verdict for her the whole of

her prospective earnings during her life expectancy. But this is hypercritical; the instruction was further that the jury should "take that into consideration in determining how much she has been damaged." See again the apposite authority of *Clifford v. Southern Ry., supra.*

The evidence was that plaintiff had been unable to work at all after the accident and her condition was such, vouched by physicians in addition to her own testimony, that the jury might have reasonably concluded that she is permanently and totally disabled, but the challenged charge did not say that they should. And the amount of the verdict plainly indicates that the jury did not attempt to include in the amount awarded the whole of her reasonably anticipated life earnings, save for the injuries. She testified she was formerly earning $22.00 per week and had recently passed examination for enlistment in the Woman's Army Corps, having actually been called to report at Fort Jackson on the Monday following the wreck on Thursday. The latter was concrete evidence of her former good physique, in addition to the presumption thereof which has been mentioned. There is no exception attacking the verdict as excessive.

It is incumbent upon counsel to request more complete instructions when they conceive that their client's rights require such. They cannot, with propriety, silently listen to a trial judge's charge and thereafter complain that it was not full enough on any particular point. Here, then, it was appellant's counsels' duty to request a more complete charge on the measure of damages, if they considered it necessary. Several written requests for instructions were made by the able counsel who conducted the trial for the appellant, but apparently none upon the subject of the measure of damages. The requests which were granted were read by the court at the conclusion of his main charge. And after all of that he made careful inquiry, as follows: "Anything further for the plaintiff? (By Mr.

Love:) Nothing further, your Honor. (By the Court:) Anything for the defendant? (By Mr. Haynsworth:) No, sir, your Honor." *Moore v. Southern R. Co.,* 163 S. C., 342, 161 S. E., 525; *Horne v. Southern R. Co.,* 186 S. C., 525, 197 S. E., 31, 116 A. L. R., 745; *Dodenhoff v. Nilson Motor Express Lines,* 190 S. C., 60, 2 S. E. (2d), 56. See also *Citzens Bank v. McDonald,* 202 S. C., 244, 24 S. E. (2d), 369.

Appellant cites the authority of *Gilliam v. Southern R. Co.,* 108 S. C., 195, 93 S. E., 865, for his contention that more adequate instructions should have been given the jury on the measure of damages, even in the absence of request therefor. Complete answer is found in the cases of *Youngblood v. Southern R. Co.,* 152 S. C., 265, 149 S. E., 742, 77 A. L. R., 1419, and *Leonard v. Broad River Power Co.,* 174 S. C., 199, 177 S. E., 152, which need not be here reviewed.

The fourth point of appellant is that there was error in the following excerpt from the court's instructions to the jury:

"In other words, gentlemen, you are not to attempt to determine which defendant was guilty of the greater degree of negligence, or which was more at fault, because each defendant is liable if it were guilty of any degree of negligence which contributed to the plaintiff's injuries as a proximate cause."

Undoubtedly, there was error. Was it cured or otherwise harmless?

It is axiomatic that a trial judge's charge to a jury, when attacked as erroneous, must be considered on appeal in its entirety. Only thereby can the impression made upon the jury be ascertained and the charge be tested for error. 32 S. E. Dig., p. 633 *et seq.,* Trial, Key 295. It is patent that the error crept in as the result of an unfortunate request to charge made in behalf of respondent and the consideration

and charging of it by the court. Whether the error was cured by the remainder of the charge can only be determined by consideration of the whole as said above, rather than the presentation of this isolated sentence. The case was a complicated one in the feature that two defendants were sued for concurrent acts of negligence, pointed out above, but under the applicable law the defaulting defendant, the Circus Company, was liable to plaintiff for simple negligence, whereas appellant was liable only under the guest statute, as has been seen. This was fully grasped by the learned and capable trial judge.

Before instruction to the jury was entered upon the court inquired of appellant's attorneys whether it was their view that plaintiff was a guest and her suit subject to the provisions of the guest statute, which position they took. Thereupon the court announced his agreement that under the testimony respondent was a guest in appellant's automobile and he would so charge the jury. Respondent's objectionable request was therefore out of order, but was nevertheless read to the jury by the court toward, but not at, the conclusion of the charge.

However, the whole charge has been read and re-read with a view of determining whether the error might have been prejudicial, and we conclude not.

At the outset of the charge, after the explanation to the jury of the pleadings and legal positions of the respective parties, "in the beginning," as he said, the judge charged the terms of the guest statute at some length, emphatically saying that the driver of a car is liable to a guest only for recklessness or wantonness. Early thereafter the subject was again adverted to with similar accuracy and clarity. Then came the erroneous reading of the request, but without comment upon it. Immediately thereafter the judge charged appellant's request number 1 which consisted of the terms of the guest statute, with a plain and

full explanation of its terms. Thereafter, this time again in his own words, the court told the jury that mere negligence on the part of appellant would not render him liable at all. Thus at four places in the charge there were plain instructions to the jury, both in the words of the judge and in the language of appellant's request, that he was absolved from liability for simple negligence and should be held only for recklessness and wantonness. Surely the jury could not have been misled upon the point. We think the case may properly be held to be one of those in which an inadvertent error was certainly overcome and the jury must have understood the applicable law which was so often stated and repeated to them by the court in the charge which was withal not unduly long. See the pertinent S. C. decisions in 32 S. E. Dig., p. 655 *et seq.*, Trial, Key 296.

Respondent argues that the purpose of the objectionable instruction was to impress upon the jury that it need not determine which of the defendants was guilty of the greater negligence but that they should find against both, if they found both guilty of negligence in the respective, required degrees as charged by the court, and they insist that the court, counsel and jury so understood. But we do not sustain this position. The charge was erroneous when applied to the peculiar facts of this case but, as seen, we conclude that the error cannot reasonably be said to have prejudiced appellant, in view of the plenitude of proper instructions applicable to the point. The conclusion has been reached with the rule in mind that a confused charge, calculated to mislead the jury, is, of course, reversible error. Worth quoting again are the words of former Justice Cardozo of the Supreme Court of the United States, speaking then for the New York Court of Appeals (*Wood v. Lucy, Lady Duff-Gordon*, 222 N. Y., 88, 118 N. E., 214), found in *Grimsley v. Atlantic C. L. R. Co.*, 189 S. C., 251, 1 S. E. (2d), 157, 161, as follows: "The law has outgrown its primitive stage

of formalism, when the precise word was the sovereign talisman and every slip was fatal."

The next question and exception, and fifth, also contain criticism of the charge, quoting the following therefrom:

"Now, Mr. Foreman and gentlemen, I suppose you are familiar with the law, 55 miles an hour is the speed limit. That is to say driving faster than that is unlawful. That does not mean that you may drive that fast under all the circumstances. Recently we have been under the obligation to drive thirty-five miles an hour."

It is assumed in argument, probably correctly, that the court had in mind the recent, war-time request of the President of the United States that, in order to conserve fuel and tires, motorists restrict themselves to the stated speed. It had first been injected into the case by appellant during his testimony. The slight reference to it in the charge was palpably unimportant because it is undisputed that the legal limit under the State law at the place of the collision was also 35 miles an hour, posted along the highway, so that if the court had in mind an inapplicable regulation or request, certainly no harm came from mentioning it when the mileage of it was the same as that of the admittedly applicable law. The State statute (Code Sec. 1616) was read to the jury so far as it applied, and no exception was taken thereabout.

Finally presented is appellant's sixth question, as follows: Did the court commit error in refusing defendant's motion for a new trial on the two grounds presented? The grounds mentioned have already been referred to; both relate to the alleged insufficiency of the evidence to sustain the verdict of the jury. But the point, were it well taken if seasonably made, came too late on motion for a new trial; appellant did not move for nonsuit or directed verdict. The case is concluded, in this respect, by

Rule 76 of the Circuit Court which plainly provides that contention that the evidence is insufficient to support an alleged cause of action must be first made on motion for non-suit or to direct the verdict. See the clear construction of the rule and the numerous citations in support of it in *Wieters v. Davis*, 181 S. C., 522, 188 S. E., 241.

All exceptions are overruled and the judgment affirmed.

MR. CHIEF JUSTICE BAKER and MESSRS. ASSOCIATE JUSTICES FISHBURNE, TAYLOR and OXNER concur.