16030

## SOUTH CAROLINA POWER CO. v. BAKER ET AL.
### (46 S. E. (2d) 278)

*Messrs. Hagood, Rivers & Young,* of Charleston, and *Williams & Busbee,* of Aiken, for Appellant,

*Mr. John E. Stansfield,* of Aiken, for Respondents,

January 14, 1948.

OXNER, J.: Respondent George Phillip Baker owned a tract of land in Aiken County containing approximately 903 acres upon which respondent Hugh F. Williams held a mortgage. Only a small portion of this tract was in cultivation. It was largely woodland and used for the purpose of growing timber. On August 26, 1946, appellant, South Carolina Power Company, served notice on the owner and mortgagee that it required a right-of-way across this tract of land, consisting of a strip 6014 feet long and varying in

width from 200 to 250 feet and embracing a total area of approximately 30 acres, for the purpose of constructing, operating and maintaining an electric transmission line, "together with all rights and privileges necessary or convenient for the full enjoyment or use thereof for the purposes above described, including the right of ingress and egress over and across said strip, and the right to cut and keep clear all trees and undergrowth and other obstructions on said strip."

The parties were unable to agree upon the amount which should be paid as just compensation for the right-of-way mentioned and on October 26, 1946, upon petition filed by appellant in the Court of Common Pleas, an order was issued directing the Clerk of Court to impanel a jury for the purposes of ascertaining the compensation which should be paid to the owner. Thereafter this jury assessed compensation in the sum of $5,765.00. The Power Company appealed to the Court of Common Pleas where a trial de novo was held and the jury there found the value of the right-of-way to be $5,454.84. Appellant made a motion for a new trial on the ground that the verdict was excessive. The motion was refused and this appeal followed.

There are six exceptions. Five of these relate to the charge of the trial Judge and the sixth assigns error in his refusal to set aside the verdict and grant a new trial on the ground that the verdict was excessive.

It is contended that the Court below erred in failing to charge the jury as to the burden of proof. At the conclusion of the charge in which no reference had been made to the question of burden of proof, the Court inquired of counsel if either party desired anything further. Appellant's counsel answered in the negative. Respondents' counsel called the Court's attention to the fact that the jury had not been charged as to the burden of proof, to which the Court replied: "There is no burden of proof, under the stat-

ute." Counsel for neither side made any further comment or request.

There is a sharp conflict in the decisions on the question of burden of proof as to the value of the land taken in condemnation proceedings. This may be accounted for to some extent by the differences in the applicable constitutional and statutory provisions of the various states. The weight of authority seems to be to the effect that the burden is upon the landowner to show the amount which he is entitled to receive as just compensation. Lewis on Eminent Domain, 3d Ed., Volume 2, pages 1112 to 1118; Nichols on Eminent Domain, 2d Ed., Volume 2, page 1138. In one of our early decisions, *Charleston & S. R. Co. v. Blake,* 12 Rich. 634, it was held that the right to open and reply in evidence and argument on an appeal from the assessment of commissioners appointed to value a right-of-way was a matter largely within the discretion of the trial Judge, but that generally the owner of the land should be regarded as the actor and entitled to open and reply. This rule has since been abrogated by the enactment of a statute, now Section 8441 of the 1942 Code, which provides that upon the hearing of an appeal to the Court of Common Pleas, "an issue shall be ordered, in which the appellant shall be the actor, and the question of compensation shall be thereupon submitted to a jury in open court, whose verdict shall be final and conclusive, unless a new trial shall be ordered by the Supreme Court." The effect of this statute, as appellant concedes, is to impose upon the party appealing the burden of showing the value of the right-of-way or easement acquired. The failure of the trial Judge to charge the jury to this effect was favorable to appellant and obviously it is not in a position to complain.

Respondent Baker also claimed in his answer to the notice of condemnation that the residue of his land would be damaged by the erection of this transmission line. The burden of proof on this issue presents a dif-

ferent question. We are not inclined to think that the statute above mentioned was intended to change the well established rule that the burden is upon the landowner to show that the value of his remaining land will be diminished by the taking. Such damages will not be presumed. The following is taken from Nichols on Eminent Domain, 2d Ed., Volume 2, page 729: "The burden of proof is upon the owner to show that the taking of part of his property will cause damage to the remainder, and unless he shows such damage by affirmative evidence, furnishing a basis from which a reasonable and proper estimate of the amount thereof can be made, his compensation will be limited to the value of the land taken; and it is of course competent for the condemning party to rebut such evidence."

Appellant's counsel did not request the Court to charge that the burden was upon respondents to show that the use of the right-of-way condemned would cause damage to the remainder of the tract of land and when asked at the conclusion of the charge whether anything further was desired, replied in the negative, thereby indicating that appellant's counsel were satisfied with the general charge which contained no reference to any phase of the burden of proof. It was respondents' counsel who then suggested that the Court charge as to the burden of proof. When the trial Judge replied that there was no burden of proof under the statute, he probably was referring to the burden of proof as to the value of the right-of-way acquired. This was evidently the thought that respondents' counsel also had in mind as it was not to respondents' advantage to call the Court's attention to the phase of the burden of proof of which appellant now complains. We do not think the Court intended the language used as an unqualified refusal to charge the jury as to any phase of the burden of proof. Any ambiguity could have been easily clarified by inquiry from counsel but none was made.

Appellant cannot now complain of the failure of the Court to charge that the burden of proof was upon respondent Baker to show damage to the remainder of his land when there was no request to charge to this effect and the Court's attention was not called to the omission. *Honour v. Southern Public Utilities Co.,* 110 S. C. 163, 96 S. E. 250; *McNinch v. City of Columbia,* 128 S. C. 54, 122 S. E. 403; *Tolbert v. Southern Mut. Life Ins. Co. et al.,* 175 S. C. 338, 179 S. E. 308; *Jeffords v. Florence County,* 165 S. C. 15, 162 S. E. 574, 81 A. L. R. 313; *Shockley v. Cox Circus Co., Inc., et al.,* 204 S. C. 353, 29 S. E. (2d) 491, 495. In both *McNinch v. City of Columbia, supra,* and *Tolbert v. Southern Mut. Life Ins. Co., supra,* it was held that the failure to charge as to a certain phase of the burden of proof did not constitute reversible error where there was no request to that effect and the Court's attention was not called to the oversight. In *Shockley v. Cox Circus Co., Inc., et al., supra,* the Court said "it is incumbent upon counsel to request more complete instructions when they conceive that their client's rights require such. They cannot, with propriety, silently listen to a trial judge's charge and thereafter complain that it was not full enough on any particular point."

The next question is whether the Court erred in submitting to the jury the question of damage to the remainder of the tract of land. Appellant contends that this was error because respondents offered no proof of such damage. As previously pointed out, damage to the remainder of the tract was claimed in respondents' answer to the notice of condemnation. When the testimony was concluded and just before the trial Judge commenced his charge, the Court in the absence of the jury made the following inquiry of counsel: "What is your respective view of the element of damages under the statute?" Appellant's counsel made the following response: "I think the actual damages and special damages will do." The statute under

which appellant proceeded allows compensation for the value of the land taken and also for any "special damage" resulting from such taking. The jury was charged substantially in accordance with the terms of the statute. While there may be some testimony to the general effect that the value of the remainder of the tract of land will be diminished by the taking of this right-of-way which intersects the entire tract near the middle, we agree with appellant that the testimony was entirely too indefinite to form a basis for the award of special damages. Indeed, respondent's counsel asserts in his brief that no claim to such damages is made. But appellant made no motion for a nonsuit or a directed verdict as to special damages and failed to call the Court's attention to the fact that the evidence was insufficient to support such a claim. The rule is well established in this State "that an instruction upon an issue as to which there is no evidence whatever, or of mistake in stating issues, is not reversible error, unless the attention of the court is called to the matter." *Burns v. Goddard*, 72 S. C. 355, 51 S. E. 915, 917. Among the more recent cases in which this rule has been followed and applied are: *Hancock et al. v. National Council Junior Order United American Mechanics*, 180 S. C. 518, 186 S. E. 538, and *Harrison v. Atlantic Coast Line R. Co. et al.*, 196 S. C. 259, 13 S. E. (2d) 137. It has accordingly been held that it is not reversible error to submit the issue of punitive damages to the jury even though there is no evidence to warrant a verdict for such damages, where the complaining party made no motion for a nonsuit or a directed verdict as to punitive damages and failed to call the Court's attention to the insufficiency of the evidence in this respect. *Jennings v. Edgefield Mfg. Co.*, 72 S. C. 411, 52 S. E. 113; *Elms v. Southern Power Co.*, 79 S. C. 502, 60 S. E. 1110; *Davis v. Reynolds*, 91 S. C. 439, 74 S. E. 827. In *Werts v. Greenwood County*, 205 S. C. 258, 31 S. E. (2d) 451, 453, the Court said: "If a trial Court in instructing the jury erroneously refers to a ground of liability or defense

which is not comprehended by the pleadings and evidence, it is a misstatement of the issues and entails a duty upon counsel to request correction at the time and not remain silent and take chances upon a favorable verdict, and thereafter appeal upon that ground in the event of an unfavorable one. Such course is unfair to adversary and court and runs counter to the interest of the State in an early end of litigation."

In the instant case not only did appellant's counsel fail to call the Court's attention to the fact that there was no evidence of any damage to the residue of the land, but suggested or invited the Court to charge on the question of special damages.

It is next contended that the charge as to special damages was erroneous in that, quoting from appellant's exception, "such charge authorized the jury to give speculative, remote and possible damages, since the jury was not told what special damages consisted of, and that only as resulted, of reasonable necessity, or naturally, from the construction and use of the line could be considered." That portion of the charge now complained of is as follows: "Now, in reference, gentlemen, to any special damages, you will recall that the statute provided that you might take into consideration any special damage resulting from the taking of the right-of-way. Now, that means this, gentlemen. That is damages that are special to the landowner resulting from the taking of the right-of-way, for the purpose for which it is taken. It would include any damage or any decrease in the actual value of the remainder of the landowner's property, by reason of the taking of this right-of-way for the purpose for which it is taken, if you find that there was any decrease in the value by reason thereof."

We do not think that the charge warrants the construction now sought by appellant. If more detailed instructions on special damages were desired, that

fact should have been made known to the Court at the conclusion of the charge.

Exception 4, which will be next considered, is as follows: "The Court erred, it is respectfully submitted, in failing to declare the law as to the duty of the owner to minimize his damages, when it appeared in the evidence and pleading that he was a farmer and engaged in the wood and timber business and could not have used the timber and wood on the right-of-way and farmed the cleared ground thereon, but refused every offer of condemnor looking to that end."

It appears that at the time of the trial a portion of the right-of-way had been cleared by appellant and in doing so, quite a number of trees had been felled and left lying on the ground which could be cut into timber and cord wood. It also appears that it will probably be unnecessary to cut all of the trees within the right-of-way condemned. During the trial of the case, a Mr. Huff, who is the head of appellant's land department and in charge of acquiring lands and rights-of-way, testified on direct examination that appellant would sell respondent Baker all the timber on the right-of-way, both that standing and cut, for $250.00, provided it was removed within sixty days. On cross-examination he said: "I think we should pay him for the full value of his timber and I presume we are going to have to do it, but instead of letting it lie on the ground, we would be glad to dispose of it for $250.00." Respondent Baker, who testified later during the trial, said this timber belonged to appellant and that he was not interested in buying it at any price.

Appellant did not request the Court to charge the jury as to the duty of the landowner to minimize his damages or as to what consideration should be given the offer of appellant to sell the timber for $250.00. The failure to do so now precludes appellant from raising the question. But we shall not rest our decision upon this ground alone.

The notice of condemnation stated that appellant ▮▮ was to have "the right to cut and keep clear all trees and undergrowth and other obstructions on said strip." Prior to the trial there was no suggestion on the part of appellant that respondent Baker could remove and use the timber on the strip condemned nor did appellant, notify him that it would probably not be necessary to cut all the timber on the right-of-way. The presumption was that appellant did not condemn more property than was necessary for the erection and maintenance of said transmission line and that the full width of the right-of-way would be used. The fact that appellant may have no present intention of making full use of the entire right-of-way would not hereafter prevent it from fully exercising all of such rights. We need not decide whether it would have been the duty of respondent Baker to attempt to minimize his damages by salvaging what he could from the timber on the right-of-way if appellant had seasonably offered to permit him to do so. Certainly in this case appellant's offer came too late. Testimony relating thereto may have been competent on the question of the value of the timber on the right-of-way but under the circumstances it would not have been proper to instruct the jury to consider this offer on the question of minimizing damages.

There is another reason why this exception cannot ▮ be sustained. While it is true that appellant did not acquire the fee to this strip of land and the owner has the right to use it in any manner not inconsistent with the purpose for which it was condemned, the case was tried on the theory that appellant was liable for the value of the land and the timber upon it. The following is taken from the direct examination of a witness employed by appellant in the land department: "Q. In your opinion, what is the estimate of the value of the land with the timber? A. Well, for the use of a line that we wanted to build, we thought we should pay the landowner all the land is worth with the

trees on it for we know we have to cut certain trees that we know would be in the way of the line." On this theory the trial Judge charged the jury that in determining the value of the right-of-way, to ascertain the actual value of the land included in the right-of-way and "the actual commercial value of any timber growing on that land at the time of the taking by the South Carolina Power Company." Appellant has not appealed from this portion of the charge and it is now the law of the case. The exception under consideration, which has been quoted in full, cannot, we think, be reasonably construed as assigning error to this portion of the charge.

Finally, appellant contends that the trial Judge erred in failing to set aside the verdict on the ground that it was shockingly excessive. Respondents offered several witnesses who testified that there were about 91,000 feet of saw timber within this right-of-way which, at $18.00 per thousand, was worth around $1,600.00; that approximately 340 or 350 cords of wood could have been cut from the right-of-way and sold for around $1,000.00; and that the land within the right-of-way without the timber was worth approximately $150.00 an acre, or a total of $4,-500.00. According to these witnesses, the total value of the right-of-way amounted to approximately $7,100.00. The estimates of appellant's witnesses were in sharp conflict with the above figures, some of them valuing the land and timber as low as ten or twenty dollars per acre. There was also considerable testimony to the effect that the value of this land consisted largely in its use for growing timber. While the amount of the verdict seems large, we cannot say under the testimony that the refusal of the trial Judge to set it aside constituted a manifest abuse of discretion. Two juries have passed upon this case. The jury impaneled by the Clerk of Court awarded $5,765.00 and the jury in the Court below $5,454.84. There is very little difference in the two verdicts. We are not at liberty to substitute our

opinion for that of the jury or of the trial Judge who permitted the verdict to stand. It is true that the testimony shows that respondent Baker purchased the entire tract for $7,600.00, but this was at a public sale as a result of a partition action between him and his brothers and sisters. It is clearly apparent that the price paid by Baker did not represent the full value of this property. Not a single witness for appellant valued this land at such a low figure.

All exceptions are overruled and the judgment below affirmed.

FISHBURNE, STUKES and TAYLOR, JJ., concur.

BAKER, C.J., dissents.

BAKER, Chief Justice (dissenting) : In January, 1946, the respondent Baker (who hereinafter will be referred to as the respondent) acquired at public sale a tract of land consisting of approximately nine hundred and three acres. He paid $7,-600.00 for the tract. The respondent Hugh F. Williams holds a mortgage over the land in question. Within a very few months after the respondent's purchase, the appellant attempted to acquire from him by negotiation of right-of-way over a portion of the lands for the purpose of the erection of a high tension power line traversing the property near its center. The right-of-way was to vary in width between two hundred and two hundred and fifty feet along a line extending through respondent's property one and one-tenth miles. The total area embraced in the right-of-way is approximately thirty acres.

The parties were unable to agree upon the compensation to be paid the respondent. In consequence, the appellant in August, 1946, initiated the present condemnation proceedings.

The proceedings were instituted under the provisions of Section 8437 *et seq.,* and 8531 *et seq.* of the Code. These statutory provisions, which in terms relate to the construc-

tion of railroads, canals, and turnpikes, and to the acquisition of rights-of-way for such purposes are made applicable to power companies by Section 8540 of the Code. Under these statutory provisions the amount of compensation (termed by the statute "just compensation") is fixed in the first instance by a jury impaneled by the Clerk of the Court of Common Pleas under the direction of the Judge of the Circuit wherein the lands are situate.

From the verdict of the jury so impaneled provision is made for an appeal to the Circuit Court; and as provided in the statute, "upon the hearing of such appeal, an issue shall be ordered, in which the appellant shall be the actor, and the question of compensation shall be thereupon submitted to a jury in open court, whose verdict shall be final and conclusive, unless a new trial shall be ordered by the Supreme Court."

In the trial of the present matter before the Clerk's jury there was a verdict in favor of the respondent for $5,765.00. Upon appeal to the Circuit Court, the jury fixed the compensation at $5,454.84.

· In its appeal to this Court, the appellant assigns as error the failure of the Circuit Judge to charge the jury as to the burden of proof, as to special damages, and as to the duty of the respondent to minimize his damages; that the issue of special damages should not have been submitted to the jury because of the absence of any testimony thereabout; that the charge of the Circuit Judge permitted the jury to assess "speculative, remote and possible damages" as special damages; and that the Circuit Judge should have set aside the verdict of the jury on the ground that it is excessive, amounting to a taking of property without due process of law.

On the question of the failure of the Circuit Judge to charge the jury on the subject of the burden of proof, the

record discloses that upon the conclusion of the charge the Circuit Judge inquired:

"Anything further from the petitioner (appellant here)?

"Mr. Williams (of counsel for appellant): No, sir.

"The Court: From the respondent?

"Mr. Stansfield (attorney for respondent): Your Honor has not charged the jury as to the burden of proof.

"The Court: There is no burden of proof, under the statute."

The Circuit Judge was in error in stating that the trial of the case did not involve the subject of the burden of proof and that therefore it was unnecessary for him to charge the jury thereabout. Whatever the rule might be in the trial of the issues before the Clerk's jury, the statute (Section 8441, Code) under which the present proceeding was conducted expressly provides that upon an appeal, an issue shall be ordered, in which the appellant shall be the actor. This clearly put the burden of proof upon the appellant.

The trial below was conducted in accordance with the statutory rule stated. The transcript shows that the trial opened with the testimony of the witnesses called by the appellant, and closed with the reply testimony of a witness called by the appellant. Counsel on both sides thus recognized the rule as stated above and tried the case in accordance therewith.

When the appellant now complains of the failure of the Circuit Judge to instruct the jury on the subject of the burden of proof, it is in effect complaining of the failure of the Circuit Judge to tell the jury that 'the burden of proof rested upon it. This was favorable to the appellant rather than prejudicial to it; and appellant's counsel doubtless took this view of the matter in failing to call the Circuit Judge's attention to the absence of any instruction on the subject.

In any aspect of the case, therefore, we are led to the conclusion that under the circumstances here presented the failure of the Circuit Judge to charge on the burden of proof did not constitute reversible error.

Another exception relates to the failure of the Circuit Judge to charge the jury on the subject of minimizing damages.

The record contains a considerable amount of evidence on this subject. Testimony offered on behalf of the appellant (not objected to) tended to show that a large quantity of timber and cord wood which had been cut by the appellant in clearing the right-of-way was made available to the respondent at a price which represented a small part of the actual value of such timber and cord wood; and there was other testimony tending to show that there was a considerable quantity of additional sawmill timber, and trees suitable for cutting into cord wood which the respondent was advised by the appellant could be cut and used by him. The respondent is in the business of handling timber and cord wood. Whether it would have been good business for him to accept the timber and wood that had been cut, at the price at which the appellant made the same available to him, was not a matter in issue before the jury, because of course the respondent was entitled to compensation in money for the taking of an easement in his land and the cutting of timber and trees by the appellant as an incident to exercising the easement. The appellant was right in assuming that the timber and cord wood cut by it from the right-of-way was its property; it however was wrong in its assumption that merely because the timber and cord wood was cut from the respondent's land across which the easement runs, he could be required to accept it by way of partial compensation for the taking of the easement. The question is not whether the respondent should have minimized his damages by purchasing the timber and cord wood in partial compensation upon the terms proposed by the

appellant, but is whether the respondent could be required to pay any amount, however small, for such timber and cord wood and to market the same in order to reduce the amount of his claim by the profit he might make in such a transaction. To this question, we must give a negative answer.

We think, however, that a different view must be taken of the failure of the Circuit Judge to charge the jury to the effect that in arriving at the value of the easement over respondent's land, consideration should be given by them to such timber and trees as were left standing by the appellant, and to the value of the utilization of the land that might be found practicable while the easement is in use by the appellant. The statute under which the condemnation was made reserves the fee in the condemned lands to the original owner, limiting the rights of the condemnor to the special uses for which the property was condemned (Code, Sec. 8444). This limitation was expressly recognized in the condemnation notice and in the petition in the condemnation proceedings. The result is that to the extent that the strip of land in question was susceptible of use for farming and other purposes not inconsistent with the exercise of the easement and to the extent that the timber on this strip of land was not and need not be cut by the appellant for the protection of its power line, the rights of user and ownership on the part of the respondent were not wholly impaired. What values might attach to these elements of ownership was a question for determination by the jury, and constituted an element of abatement of the price that the appellant should be required to pay for the property.

The Circuit Judge not only failed to charge as above indicated; he in effect excluded the subject from consideration by the jury when he said in his charge:

"Now, in passing upon that gentlemen, you ascertain what the actual value of the land taken is. That means the

actual value of the land included in the right-of-way. *You would also take into consideration, gentlemen, the actual commercial value of any timbers growing on that land at the time of the taking of the South Carolina Power Company."* (Emphasis added.)

Indeed, he thus told the jury that the value of the timber growing upon the property, though not in the way of the appellant in the exercise of its rights incident to the easement, should be taken into consideration as an element of the value of the property rights acquired by the appellant. The testimony clearly discloses that there was a quantity of growing and unfelled timber marketable as lumber and cord wood which was left upon the property by the appellant because it was unnecessary to disturb the same in constructing its power line.

While the appellant has failed to specifically embrace this last mentioned subject within any of its exceptions, yet its fourth exception is sufficient to cover the question. This exception refers to the subject of minimizing damages but also touches the questions relating to the value of the growing timber and the possibility of use of the strip in question for growing timber and farming purposes.

A further serious question made by the exceptions of appellant is whether the respondent was entitled to recover special damages. There is no substantial testimony in the record indicating any direct damage to the remainder of respondent's property. Nor is there any testimony from which it can be deduced that some damage or injury to the remainder of the respondent's property, or some diminution in its market value, would arise out of the mere fact of the construction of the power line over the limited area of the right-of-way.

As already stated, the right-of-way runs through the main body of respondent's tract, not far from the center of the tract.

We do not deem it necessary to decide in this case whether an award of special damages can be made on the speculative theory that the presence of the power line running across respondent's property would tend to reduce the value of the remainder of the property by reason of fears or prejudices or other attitudes on the part of prospective or potential purchasers. There is considerable authority on this subject and the rulings of appellate courts appear to be diverse. It suffices to say that in the present case there is no testimony of the character above referred to. Some of respondent's witnesses did testify to personal objections on their part to owning property over which power lines are constructed, but the case is barren of any showing or attempted showing that the intrinsic or market value of respondent's property has in fact been depreciated beyond the limits of the right-of-way.

On this subject the Circuit Judge charged the jury that special damages in the present case "would include any damage or any decrease in the actual value of the remainder of the landowner's property * * * if you find that there was any decrease in the value by reason thereof." But we find in the record no testimony of probative value on this subject. Indeed, the respondent in his printed argument, takes the same view when he says: "While the landowner alleged injury would result to his farm, crop and the remainder of the land, the said landowner, by his testimony, and in argument before the Jury, did not contend for any special damages. A reading of the record will show that the only contention made by the landowner was for compensation on account of the taking of his land and timber. The landowner did not contend for damages to the remainder of his premises. The landowner contented himself with proving the value of his land and timber and cord wood that had been taken by the appellant."

When the Circuit Judge discussed with counsel the subject matter of the charge to be made by him, he asked coun-

sel: "What is your respective view of the element of damages under the statute?"

Counsel for appellant replied: "I think the actual damages and special damages will do."

This statement of appellant's counsel might at first blush be taken to be an invitation to the Circuit Judge to charge the jury on the subject of special damages and to thus constitute a waiver of the right to have had the Circuit Judge instruct the jury that there was no testimony upon which special damages could be awarded. But when the matter is considered in the light of the whole record, the view just stated appears to be harsh and technical.

Appellant's counsel was correct that the matters involved were actual damages and special damages. If the Circuit Judge had charged the jury that they could not award special damages because of the absence of evidence on this subject, he would have done precisely what counsel doubtless contemplated when he stated that special damages was one of the subjects involved in the case.

The charge of the Circuit Judge as actually given was not a misstatement of the issues made by the pleadings (a matter to which counsel are required to call the attention of the Court); it was strictly a misstatement of the law to the extent that it indicated to the jury that they could award special damages on whatever theory they might adopt as to damages inflicted upon the remainder of respondent's property even though there was no testimony before the jury indicating any special damages in this particular case.

This element in the case is a most important one. It is reasonably deducible from the record that without any testimony which can be said to deal with the subject of special damages, there was something of the dramatic in the statements of the witnesses about the condemnor "busting

through" the property in question and similar statements, and that the absence of caution on the part of the Circuit Judge that there was no evidence indicating damage to the remainder of the property left the jury with a belief that damages could be assessed by them as to the remainder of the land merely because of the taking of the right-of-way through it.

In the light of the foregoing it is unnecessary to deal with appellant's exception raising the question that the verdict of the jury "is shockingly excessive, and amounts to a taking of condemnor's property without due process in violation of the due process clause of the Constitution of the State and that of the United States."

The judgment of the Circuit Court should be reversed and the case remanded for a new trial.

NOTE: The foregoing was written as and for the opinion of the Court, but not having received the concurrence of the other Justices, it becomes a dissenting opinion.